**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**ROMEY AUSTIN MUNS,**
**ADC # 142372** **PLAINTIFF**

**V.** **NO. 5:09CV00397-JLH-BD**

**CORRECTIONAL MEDICAL SERVICES, *et al.*** **DEFENDANTS**

# RECOMMENDED DISPOSITION

## I. Procedure for Filing Objections:

The following recommended disposition has been sent to United States District Court Chief Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of this recommendation. A copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

## II. **Background**:

Plaintiff, an inmate at the Varner Unit of the Arkansas Department of Correction ("ADC"), filed a complaint pro se under 42 U.S.C. § 1983. (Docket entry #2) He later filed an amended complaint amending his request for relief. (#5)

Plaintiff alleges that on December 29, 2008, he was injured while playing basketball and suffered a fractured left ulna. He claims that he received inadequate medical care and treatment for his injury. He also alleges that in a separate incident, on April 22, 2009, he fractured his right ankle. According to the Plaintiff, the Defendants failed to provide him adequate medical care and treatment for this injury, as well.

Plaintiff names as Defendants Correctional Medical Services ("CMS"), Ruloff Turner, Genia Snyder, and Joe Page. He requests monetary damages.

On September 7, 2010, Defendants CMS, Turner, and Synder (the "Medical Defendants") filed a motion for summary judgment. (#39) On the same day, ADC Defendant Page also filed a motion for summary judgment. (#41) Plaintiff has responded to both motions for summary judgment. (#47)

Based upon the evidence presented, the Court recommends that both motions for summary judgment (#39 and #41) be GRANTED.

## III. Discussion:

### A. Summary Judgment Standard

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). If the opposing party fails to carry that burden or fails to establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. See *Celotex,* 477 U.S. at 322. "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

B. The Medical Defendants' Motion for Summary Judgment

In their motion for summary judgment, the Medical Defendants argue that Plaintiff failed to exhaust his claims against Defendants Turner and Synder and that claims against them should be dismissed. In addition, the Medical Defendants contend that Plaintiff's deliberate indifference claim against CMS fails as a matter of law. The Court agrees.[1]

1. Exhaustion - Defendants Turner and Snyder

The Medical Defendants contend that Plaintiff failed to exhaust his claims against Defendants Turner and Snyder as required by the Prison Litigation Reform Act ("PLRA"). That statute requires prisoners to exhaust their administrative remedies before filing a lawsuit challenging prison conditions. "No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained").

---

[1] Because the Plaintiff has failed to exhaust his administrative remedies against Defendants Turner and Snyder, the Court will not address the Medical Defendants' argument that Plaintiff's claims against these Defendants fail as a matter of law based on a failure to show any injury as a result of any delay in treatment. *See Davis v. Harmon,* Case No. 10-1863, 2010 WL 3259378, (8th Cir. Aug. 19, 2010) (unpublished opinion) (holding that the trial court erred when it dismissed the case, with prejudice, on the merits without first considering the exhaustion issue, and dismissing without prejudice); *Barbee v. CMS,* Case No. 10-1891, 2010 WL 3292789 (8th Cir. Aug. 23, 2010) (unpublished opinion).

Congress enacted the PLRA to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 424, 122 S.Ct. 983 (2002). The purpose of the exhaustion requirement includes "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S.199, 127 S.Ct. 910, 923 (2007); see also *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2385 (2006).

In *Jones*, the Supreme Court clarified that "the level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 127 S.Ct. at 923.

In order to exhaust administrative remedies in accordance with the ADC's Inmate Grievance Procedure, an inmate must submit a grievance specifically identifying the personnel involved.[2] (#39-1 at p.7, #39-2 at p.5) Medical grievances must be fully appealed to the ADC's Deputy Director for Health and Correctional Programs. (#39-3 at p.1)

---

[2] The Inmate Grievance Procedure that was in effect at the times relevant to this lawsuit was contained in two ADC Administrative Directives, AD -07-03 (effective August 6, 2007 through January 29, 2009), and AD09-01 (effective January 30, 2009 to present). (#39-1 and #39-2)

Here, the evidence shows that Plaintiff fully exhausted two medical grievances, VU-09-00022 and VU-09-00393, during the time relevant to this case. (#39-3 at p.2) In grievance VU-09-00022, Plaintiff complains that Captain Page denied him medical attention. (#39-3 at p.3) In grievance VU-09-00393, he complains that, after he injured his ankle, CMS engaged in “a cost containment practice” which resulted in a delay in providing Plaintiff medical treatment. (#39-3 at p.9) Plaintiff does not make any complaints about Defendant Turner or Defendant Snyder in either of these grievances. (#228-5 at p.2)

Plaintiff has failed to come forward with any evidence to show either that he did fully exhaust his administrative remedies regarding his claims against Defendants Turner and Snyder or that he was prevented from exhausting his claims in a timely manner. Although in his response to the motions for summary judgment, Plaintiff claims that he fully exhausted his grievances, he has not provided any evidence of exhaustion. Because Plaintiff has failed to create a genuine dispute of material fact on this issue, Defendants Turner and Snyder are entitled to judgment as a matter of a law.

2. Deliberate Indifference - Defendant CMS

Plaintiff complains that after he fractured his right ankle, CMS engaged in "cost containment practices" that resulted in a failure to adequately treat his injury.[3] Whether a prison's medical staff deliberately disregarded an inmate's needs is a fact-intensive inquiry. *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007). "The plaintiff-inmate must clear a substantial evidentiary threshold to show that the prison's medical staff deliberately disregarded the inmate's needs by administering an inadequate treatment." *Id*. Allegations of negligent misdiagnosis do not state a claim for relief under § 1983.

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106, 97 S.Ct. 285. See also *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) ("Medical malpractice alone . . . is not actionable under the Eighth Amendment."). "Deliberate indifference entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

[3] In his original complaint, Plaintiff also complains that CMS delayed providing him medical care for his right ulna as a result of "cost containment practices." (#2 at p.47) Plaintiff, however, fails to include any such allegation in his exhausted grievances. (#39-3 at pp.3 and 9)

exists, and he must also draw the inference." *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (internal quotation omitted).

Here, in his deposition, Plaintiff testified that CMS failed to use an ambulance to transport him to the hospital, and that he was not immediately taken to a local hospital so that CMS could save money.[4] (#39-4 at p.30) Plaintiff also claims that when he spoke with Dr. Lytle, Dr. Lytle told him that he should have been evaluated by an orthopedist sooner. (#2 at p.7)

Based upon the undisputed evidence, on April 22, 2009, Plaintiff suffered an injury to his ankle. (#39-4 at p.20-21) The next day, Defendant Turner examined Plaintiff and concluded that Plaintiff probably had either strained or sprained his right ankle. (#39-4 at p.56) Defendant Turner, however, remarked that he could not rule out the possibility of a fracture until an x-ray could be taken. (#39-4 at p.56) Defendant Turner provided Plaintiff ibuprofen and ordered that x-rays be taken the next day. (#39-4 at p.56)

On April 24, 2009, an x-ray was taken of Plaintiff's right ankle. (#39-8 at p.46) Defendant Turner saw Plaintiff again on April 28, 2009, and noted that Plaintiff's x-rays

---

[4] Although in his deposition, Plaintiff also states that CMS did not adequately train their employees, Plaintiff did not include any such claim in any of his grievances, nor did Plaintiff make any such allegation in his original or amended complaints. (#39-4 at p.30, #2, and #5)

revealed a fracture in his right ankle. (#39-4 at p.57) Defendant Turner continued Plaintiff's splint and referred him to an orthopedic's clinic. (#39-4 at p.57)

On April 29, 2009, Plaintiff complained of ankle pain and stated that his splint had a bad odor. (#39-4 at p.58) Defendant Turner ordered that Plaintiff's splint be changed and prescribed Plaintiff Darvon. (#39-4 at p.58)

On May 6, 2009, Dr. Lytle, an orthopedist, examined Plaintiff and recommended surgery. (#39-8 at p.12) On May 8, 2009, Plaintiff underwent surgery to repair his ankle. (#39-8 at p.12) On May 20, 2009, Dr. Lytle examined Plaintiff, removed his splint, and noted that Plaintiff's wound was healing nicely, that the alignment was excellent and that Plaintiff did not report any problems. (#39-8 at p.16)

According to the undisputed evidence, Plaintiff was seen by an orthopedist within two weeks of sustaining his ankle injury. During the interim, Plaintiff was consistently treated by CMS personnel. Although Plaintiff did not immediately undergo surgery, there is no evidence of a CMS policy, custom, or official action that resulted in a delay in treatment. *Johnson v. Hamilton*, 452 F.3d 967, 972 (8th Cir. 2006) (concluding that a one-month delay in treating a fractured finger did not rise to a constitutional violation). Further, Plaintiff has failed to present any evidence that CMS actually saved money by engaging in the course of treatment it provided Plaintiff. Plaintiff's conclusory allegations and unsubstantiated beliefs are insufficient to defeat a summary judgment motion. He has no constitutional right to receive a particular course of treatment. *Long v.*

*Nix*, 86 F.3d 761, 765 (8th Cir. 1996). Accordingly, Plaintiff has failed to create a genuine issue regarding to his claims against CMS, and CMS is entitled to summary judgment.

C. Defendant Page's Motion for Summary Judgment

Plaintiff claims that Defendant Page failed to provide him with any medical treatment after he injured his left arm on December 29, 2008. He alleges that after falling on his arm during gym call, his arm began to bruise and swell. (#39-4 at p.40) As a result, after Plaintiff walked to his barracks as directed, he turned and went to the infirmary. (#39-4 at p.40-41) Plaintiff states that Defendant Page told him to return to his barracks and place a sick call request. (#39-4 at p.41)

In his motion for summary judgment, Defendant Page argues that: (1) Plaintiff's claims for monetary damages against him in his official capacity are barred by sovereign immunity; (2) Plaintiff cannot prove that he acted with deliberate indifference to his medical needs; and (3) he is entitled to qualified immunity.[5] Defendant Page's motion should be granted.

1. Sovereign Immunity

In his motion for summary judgment, Defendant Page correctly argues that Plaintiff's official capacity claims for money damages are barred by sovereign immunity.

---

[5] Because the Court finds that Plaintiff has failed to state a constitutional claim against Defendant Page, Defendant Page's qualified immunity argument will not be addressed in this Recommendation.

A person sued in his or her official capacity is not a "person" subject to suit under 42 U.S.C. § 1983. The law is well established that a civil litigant cannot obtain money damages on a claim against state actors in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304 (1989). Accordingly, Plaintiff's claim for money damages against Defendant Page in his official capacity fails as a matter of law.

2. Deliberate Indifference

In order for Plaintiff to establish that Defendant Page acted with deliberate indifference to his medical needs, Plaintiff must show that he suffered from an objectively serious medical need and that Defendant Page "actually knew of but deliberately disregarded" that need. *Hines v. Anderson*, 547 F.3d 915, 920 (8th Cir. 2008) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Because Plaintiff claims that he experienced a delay in medical treatment as a result of Defendant Page's conduct, he must produce "verified medical evidence" demonstrating that he suffered an injury as a result of the delay or that the delay affected his prognosis. *Jackson v. Hallazgo*, 30 Fed.Appx. 668 (8th Cir. 2002) (unpub. per curiam) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) ("[a]n inmate's failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs"); *O'Neal v. White*, 221 F.3d 1343, *1 (8th Cir. July 12, 2000) (unpub. per curiam) (citing *Crowley*,

109 F.3d at 502) (concluding that plaintiff's "failure to submit verifying medical evidence to show a detrimental effect from any delay in tests, surgery, or alternative treatments was fatal to his Eighth Amendment claim")). See also *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994) (delay in treatment claims require evidence that defendants ignored an acute or escalating situation or that the delays adversely affected the prognosis).

Plaintiff encountered Defendant Page on the day that he sustained the injury to his left arm. (#41-1 at p.11) Plaintiff claims that, on the day of the injury, Defendant Page said that he did not care about Plaintiff's arm injury and ordered Plaintiff to return to his barracks and submit a sick call request.[6] (#41-1 at p.11) Plaintiff testified that he submitted multiple sick call requests regarding his arm injury, but did not indicate that the matter was an emergency. (#41-1 at pp. 41-1 at p.12-14) Plaintiff apparently was not seen by the medical staff until January 6, 2009. (#41-1 at p.15) At that time, an x-ray revealed that Plaintiff had sustained a fracture. (#41-1 at p.31)

Although the Court agrees that Plaintiff did experience some delay before receiving medical treatment, despite Plaintiff's claim that he continues to experience pain, Plaintiff has failed to show that his condition worsened as a result of Defendant Page's conduct. Moreover, Plaintiff has failed to show that Defendant Page prohibited Plaintiff

---

[6] Defendant Page did not recall any time Plaintiff arrived at the infirmary complaining of an arm injury or any time he instructed Plaintiff to leave the infirmary despite Plaintiff's claims of pain. (#41-2 at p.2)

from submitting a sick call request, an emergency sick call request, a grievance, or an emergency grievance.[7]

Further, the Court cannot conclude that Defendant Page was aware of Plaintiff's serious medical need when he told Plaintiff to return to his barracks. Although Plaintiff claims that his arm was beginning to bruise and swell, there was no visible indication that Plaintiff had sustained a fracture in his left arm. See *Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991) (defining a serious medical need as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.") Although Plaintiff testified that he informed Defendant Page that he thought that his arm was broken, Plaintiff also testified that immediately after the incident occurred, he did not notify the officer on duty of any injury because he thought that it was just a sprain and "it would be all right." (#41-1 at p.20)

Because Plaintiff has failed to establish that he suffered any injury as a result of Defendant Page's conduct, he has failed to create a material dispute of fact. Defendant Page's motion for summary judgment should be granted.

---

[7] The Court notes that the inmate grievance that Plaintiff filed regarding this incident dated January 3, 2009, does not indicate that it was an emergency. (#39-3 at p.3)

## IV. Conclusion:

The Court recommends that both motions for summary judgment (#39 and #41) be GRANTED. Plaintiff's claims against Defendants Turner and Synder should be DISMISSED without prejudice. Plaintiff's claims against CMS and Defendant Page should be DISMISSED with prejudice.

DATED this 1st day of October, 2010.

UNITED STATES MAGISTRATE JUDGE